NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ELEANOR CAPOGROSSO, | : | **Hon. Dennis M. Cavanaugh** |
| | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | Civil Action No. 08-CV-2229 (DMC-JAD) |
| | : | Consolidated for discovery and case management purposes |
| | : | |
| STATE FARM INSURANCE CO., | : | |
| | : | |
| Defendant. | : | **OPINION** |
| | : | |
| ELEANOR CAPOGROSSO, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| -vs- | : | Civil Action No. 07-CV-5324 (DMC-JAD) |
| | : | |
| 30 RIVER COURT, et al, | : | |
| | : | |
| Defendants. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by State Farm Insurance Company ("State Farm") to impose a dismissal sanction against Eleanor Capogrosso ("Plaintiff") for spoliation of evidence and failure to comply with a November 23, 2009 discovery Order issued by this Court. In a parallel proceeding instituted by Plaintiff and consolidated with the present matter for pretrial purposes, named Defendants 30 River Court East Urban Renewal Company, Tower America

Management, L.L.C. and LeFrak Organization, Inc. (collectively with State Farm, "Defendants") request to join in the present motion to dismiss.[1]  Capogrosso v. 30 River Court East Urban Renewal Co., et. al., 07-CV-5324 (DMC-JAD); Docket Entry ("Dkt.") 66.  Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  After considering the submissions of all parties, it is the decision of this Court, for the reasons herein expressed, that the motion to dismiss is **granted.**

I.   **BACKGROUND**

    A.   Controversies Before this Court

    Plaintiff's Amended Complaint alleges direct water damage and property damage in Plaintiff's Jersey City, New Jersey apartment as a result of a pipe burst on April 7, 2007.  At that time, Plaintiff possessed two insurance policies through Defendant State Farm, including a Renter's Policy (Policy # 30-C2-9699) and a Personal Articles Policy (Policy # 30-C7-9268-4).   Initially, Plaintiff's claim proceeded under the Renter's Policy and subsequently, Plaintiff asserted additional claims pursuant to the Personal Articles Policy.  Plaintiff was issued an advance payment of $5,000.00, instructed to forward her bills and for approximately three months, accommodated in a hotel at the expense of Defendant State Farm.  Coverage by Defendant State Farm was later terminated.[2]

    On May 9, 2007, in connection with an inspection conducted on May 2, 2007 as a result of

---

[1]

This motion was fully briefed in Civil Action 08-2229. Although Defendants in Civil Action 07-5324 join in the present motion, in lieu of submitting a formal brief, the remaining Defendants rely on Defendant State Farm's submission. Accordingly, the Court will rely on Defendant State Farm's brief in addressing the instant motion.  Any reference to Defendant State Farm in the singular should not be misinterpreted as inapplicable to Defendants who now join in the motion.

[2]

Correspondence between Defendant State Farm and the Department of Banking and Insurance indicates that, with respect to Plaintiff's Renter's Policy, coverage for "mold" under Endorsement FE-5443 was limited to $10,000.00.

Plaintiff's water damage claim, a Microbial Investigation Report was prepared by PHASE Associates, LLC on behalf of State Farm Insurance Company.  With the exception of Plaintiff's dining room furniture, the report and survey primarily focused on structural and airborne contamination of the residence rather than individual items located within the residence.  The report indicated that "[t]he dining area table and chest of draws [sic] were the only pieces of furniture identified by Ms. Capogerosso [sic] as having contact with the water.  There were no signs of suspect mold growth on these pieces of furniture." As a general observation, the report determined that there was "no detectable odor of mold or mildew when entering the apartment or any rooms within the apartment." With respect to the floor samples collected, the report indicated that "[t]he concentration of fungal spores from surface samples collected from two floor locations in the dining area were not significant and suggested that the dark stains were not the results of mold growth."  Further, the report indicated that "[t]he concentration of fungal spores from the bulk sample collected of the wood floor, under the wall clock in the dining area, was below the detection limit of the analytical method.  This suggests that the sample was not contaminated with mold." The report concluded by recommending remedial measures, including: (1) removal for affected portions of the wood floor and underlying pad; (2) hard surfaces; (3) an additional inspection; and (4) suggested the consideration of a negative air filtration unit.  The report does not identify individual items as subject to inspection.

On July 25, 2007, in connection with an inspection conducted on July 3, 2007 as a result of Plaintiff's water damage claim, a Fungi Inspection and Testing Report was prepared by AIR Consulting Services, LLC on behalf of State Farm Insurance Company. The inspection focused on the "biological conditions of the apartment affected by a water leak from the toilet water feed line[,]"

3

including airborne and surface fungi, rather than individual items located in the residence.  That report determined that seven surface "samples demonstrate that mold contamination has developed in the hardwood flooring and lower drywall as a result of the flooding."  Further, the report concluded by recommending remedial measures, including:(1) discarding base trim and hardwood flooring; (2) discarding the bottom twelve inches of drywall; and (3) cleaning and disinfecting fan/coil units in the living room and bedroom. The report does not identify individual items as subject to inspection.

On September 29, 2007, in a message to State Farm representative Renee Bass, Plaintiff advised Defendant State Farm via fax, "I have no option but to discard all my personal possessions. If State Farm wishes I will make arrangements for them to view my possessions.  Please accept this fax as notification that State Farm will have until October 15th to view my possessions."  In light of Plaintiff's stated intent to discard "all" contaminated property, in an October 5, 2007 letter, counsel on behalf of Defendant State Farm[3] accepted Plaintiff's offer to inspect the allegedly damaged personal property and simultaneously requested to remove some of the allegedly contaminated items in order to preserve them for future litigation.  In an October 19, 2007 letter, counsel for  Defendant State Farm wrote to confirm a prior conversation.  Pursuant to the conversation referenced in that letter, Defendant State Farm's counsel indicated that Plaintiff had notified Defendant State Farm that Plaintiff no longer would be discarding the allegedly damaged items, but instead would preserve the items in a storage facility.  In a letter dated October 23, 2007, Plaintiff indicated the following:

> Your letter stated I will not permit an inspect [sic] is inaccurate. I always wanted the
> inspection.  Each day that an inspection is not taking place, it is costing me storage

---

[3]

Counsel for Defendant State Farm refers to Windels Marx Lane & Mittendorf, LLP.

fees.  If you want to inspect by all means please, please come and inspect but it must be done properly, [sic] Your client wants random testing, if your client is claiming that all my possessions are not contaminated by mold you must test all my possessions, by an industrial hygienist, not just a few items as you suggested. Random testing accomplishes no scientific findings since all possessions, not just a few are contaminated by mold.

Please make arrangements to inspect my property on October 31, 2007.  If you will [sic] like an industrial hygienist to test please arrange one for that day to test ALL items not just random items. . . The storage room is costing me $374.00 a month.  If you cannot comply with the above, I will give you the option of paying this storage fee until the matter is resolved in court. . . In your letter dated October 5, 2007, you indicated that your client would like "to remove some of the allegedly contaminated items in order to preserve them for future litigation".  I do not trust State Farm with any of my possessions.   . . .If State Farm wants to preserve the possessions, it can pay the storage fee of $374.00 but the control and possession of the contents will remain under my control.

In an October 29, 2007 response to the foregoing letter, dated October 23, 2007, but received by Defendant on October 29, 2007, counsel for Defendant State Farm indicated that "upon short notice[,]" Defendant "will be unable to make arrangements to inspect your property on October 31, 2007."

On November 1, 2007, Plaintiff faxed Defendant's counsel a note indicating that "[o]n October 30, 2007, I spoke with your secretary and informed her that I was available anytime for the inspection.  Each day that you do not inspect it is costing me storage fees.  Please advise me when you will inspect."[4] [5]  On November 6, 2007, Defendant State Farm forwarded Plaintiff a letter

---

[4]

Notably, on November 2, 2007, Defendant's counsel corresponded with Ronald Kurzeja, Esq.  In that letter, Defendant's counsel confirmed that pursuant to a conversation on October 30, 2007, Mr. Kurzeja represented that he had not been retained by Plaintiff, but merely had assisted in the coordination of an inspection.  In that letter, counsel also reiterated an acceptance of Plaintiff's offer for inspection of the allegedly damaged personal property.

[5]

On November 7, 2007, Plaintiff filed a Complaint in the United States District Court, District of New Jersey against Defendants 30 River Court East Urban Renewal Company, Tower America Management, L.L.C. and LeFrak Organization, Inc.

acknowledging Plaintiff's claim pursuant to Plaintiff's Personal Articles Policy.  The letter stated, "[W]e understand you would like to make a claim under your State Farm Personal Articles Policy for items covered under that policy that you contend have been contaminated with mold." Further, the letter reiterated policy conditions imposed on the insured, including the insured's duty to "protect the property from further loss and take all steps possible to minimize the loss.  Expenses incurred will be borne by you and us proportionate to our respective interests[.]" Additionally, that letter cites as a policy condition that the insured agrees to "be examined under oath and subscribe to the same as often as we reasonably require[.]"  On November 13, 2007, Defendant State Farm's counsel notified Plaintiff that Defendant would not submit to Plaintiff's demand for an inspection of each individual item claimed.  Further, that letter requested Plaintiff to clarify whether Plaintiff intended to preserve the items for litigation or, in the event that Plaintiff intended to discard the items, Defendant State Farm requested an opportunity to inspect beforehand.

On November 14, 2007, Plaintiff received a fax from Defendant State Farm containing the following message, "[p]lease be advised that I have retained the following Industrial Hygienist to assist me in the investigation of your personal property listed in your Personal Articles Policy."  The Industrial Hygienist is identified as Richard Lester of Garden State Environmental, Glen Rock, New Jersey.

As of November 2007, Plaintiff proposed that inspection under the guidance of a federal judge would be best.  In a November 13, 2007 letter, Defendant's counsel asserted that if Plaintiff was "going to preserve the items for [the] threatened lawsuit, we can address the inspection in discovery."

In a November 19, 2007 letter to Plaintiff, counsel for Defendant State Farm indicated that

6

Plaintiff advised availability for inspection of the items claimed under Plaintiff's Personal Articles Policy on December 3rd, 5th or 6th. Pursuant to what appears to be an internal communication among Defendant State Farm's employees, there is notification to cancel the inspection as a consequence of the fact that Plaintiff was in the process of retaining litigation counsel to assist with inspection/inventory matters. In a letter dated December 6, 2007, Defendant's counsel wrote to confirm cancellation of the December 3, 2007 inspection as per Plaintiff's request.

In a December 18, 2007 letter to Plaintiff, counsel for Defendant State Farm indicated that "we are waiting to hear from your attorney to schedule an inspection of the 22 scheduled items on your Personal Articles Policy."[6] In a January 18, 2008 letter, Defendant's counsel reminded Plaintiff that several requests have been made to schedule an inspection of the claimed items and requested that Plaintiff contact Defendant to "schedule a mutually convenient time for inspection and [a] recorded statement." Subsequently, in a letter dated March 5, 2008, Defendant's counsel indicated that "State Farm has made several requests to schedule an inspection of the items covered under your personal articles policy that you claim have been damaged and to take your recorded statement regarding this claim. In fact, this is our sixth letter requesting an inspection. To date you have not produced the items for inspection, provided a recorded statement or returned the proof of loss that we requested you complete in our letter dated November 6, 2007."

On April 2, 2008, Plaintiff filed suit against Defendant State Farm in the Superior Court of New Jersey, Bergen County. On May 7, 2008, Defendant State Farm removed the action from New Jersey Superior Court to the United States District Court, District of New Jersey.

---

[6]

As of November 2, 2008, counsel for State Farm corresponded with Lynda A. Bennett, Esq., presenting an offer of an additional $10,000.00 to settle Plaintiff's claim under the Renter's Policy. The letter further indicated that the offer was in no way to be construed as an admission of liability or wrongdoing by State Farm.

On May 20, 2008, this Court issued a letter Order requiring the parties to attend a scheduling conference.   In accordance with that letter, the parties were advised that early disclosure requirements pursuant to Fed. R. Civ. P. 26 would be enforced, requiring the exchange of documents or things in the possession of counsel or the party. Pursuant to a June 3, 2008 Order of this Court, the present action was consolidated with Plaintiff's suit in Civil Action 07-5324, filed on November 7, 2007, for purposes of discovery and case management.  On July 10, 2008, following a June 30, 2008 scheduling conference, this Court issued a Pretrial Scheduling Order directing that discovery remain open until January 30, 2009.[7]

In Civil Action 07-5324, Defendants originally filed a motion to dismiss on April 24, 2008. Subsequently, Plaintiff decided to voluntarily dismiss the Complaint on May 6, 2008.  Thereafter, Plaintiff reversed her position and sought to reinstate the Complaint on August 11, 2008.  The Court granted Plaintiff's request and Defendants reinstated the initial motion to dismiss.   Plaintiff's response in opposition was due on December 22, 2008.  On December 29, 2008, Plaintiff submitted a letter to this Court requesting an extension of time to file an opposition.  Plaintiff requested the

---

[7]

Notably, upon review of the materials on record, it was discovered that in the course of a February 6, 2009 conference, premised on the possibility of settlement, conducted before the presiding Magistrate Judge in this matter, Plaintiff represented the following:

> I gave [counsel] a letter indicating that he had 10 days in order to come inspect my possessions in my apartment in the storage facility where I was holding it.  He never came.  He never made any gesture of coming.  I had to pay storage fees of I think $347 a month since then, October of 2007, till finally in July of 2008, I couldn't pay it no longer.  It was just too much.  And what I ended up doing with the help of some storage facility men, I had to discard the items that were contaminated, which I made the call on, and I documented that with photographs.  And I still have everything in a storage space, but a price much less, like the things that were not contaminated that were in plastic, I kept so that the storage fee could be substantially less. . . .Since October 2007 till July 2008.

February 6, 2009 Transcript, pg. 4, lines 1-13; pg. 13, line 24.. However, at such time,  this information was never brought to the attention of the district judge assigned to this matter. Notably, the stark discrepancy between the potential dates of destruction, 4-5 months, does not favor Plaintiff's position, but rather underscores Plaintiff's inconsistent representations and misconduct.

extension as a consequence of a June 30, 2008 car accident. Despite the fact that Plaintiff's request was filed after the deadline imposed, this Court permitted Plaintiff an extension of time until February 2, 2009. Plaintiff failed to file in accordance with the extended deadline and instead filed her response in opposition on February 4, 2009. The Court considered Plaintiff's submission.

On February 26, 2009, this Court granted Plaintiff leave to file a motion to amend the initial Complaint in Civil Action 08-2229 no later than March 16, 2009. Plaintiff filed the motion to amend on March 19, 2009. On April 30, 2009, this Court granted Plaintiff's motion to amend the Complaint. On May 8, 2009, Plaintiff filed an Amended Complaint. In accordance with this Court's Opinion and Order, dated October 20, 2009, Plaintiff was granted leave to file a Second Amended Complaint not inconsistent with that Opinion. On April 13, 2010, almost six months after the Court's Order, as a consequence of Plaintiff's failure to submit a Second Amended Complaint, this Court vacated that portion of the October 20, 2009 Order permitting Plaintiff to file a Second Amended Complaint. On April 22, 2010, Plaintiff filed a motion to add causes of action and defendants to the Complaint. On June 3, 2010, the presiding Magistrate Judge in this matter denied Plaintiff's motion to amend, as a consequence of the fact that this Court had previously issued an Order precluding Plaintiff from submitting a Second Amended Complaint. Thereafter, Plaintiff filed an appeal of the June 3, 2010 Order in this Court.

On August 6, 2009, this Court issued an Order extending discovery until October 2, 2009. In a letter dated August 11, 2009, Defendant notified Plaintiff of its intention to depose Plaintiff on August 26, 2009 at 10:00 a.m. in the United States Post Office and Courthouse Building. In response, Plaintiff's August 17, 2009 correspondence asserted that Plaintiff would be unable to attend the deposition because she would be out of the country on that date.

In a letter dated August 17, 2009, Plaintiff submitted to the Court that she was unable to comply with a discovery Order dictating that discovery conclude as of October 2, 2009 because she was not in possession of her former attorney's file in the matter.  By way of letter dated August 21, 2009, Defendant State Farm again requested prospective dates from Plaintiff for purposes of conducting an inspection of Plaintiff's allegedly damaged personal property. On August 21, 2009, Plaintiff also instituted a separate grievance proceeding before the District Ethics Committee allegedly to procure the client file in the possession of Plaintiff's former attorney.

On September 18, 2009, Defendant wrote Plaintiff, "[y]ou have not responded to any of our requests that you provide dates for your deposition and the inspection of your allegedly damaged personal property."  Defendant's letter continues, "[u]nless we hear from you by the end of the day, we will have no choice but to seek the Court's assistance in obtaining the requested discovery."  In response, Plaintiff indicated, "[I] have previously responded to your request, so I see this letter only as harassment."  Plaintiff's letter continues, . . ."I explained I have done everything possible to further this case.  I had no choice but to submit a grievance from against [sic] Mr. Goldman, and I am still waiting for a response before further action can commence."  On September 22, 2009, in light of this Court's August 6, 2009 Order requiring discovery to conclude as of October 2, 2009, Defendant requested a scheduling conference before the presiding Magistrate Judge in order to resolve the discovery related scheduling issues.

On November 23, 2009, this Court issued an Order directing Plaintiff to appear for a deposition within 30 days of the date of that Order.  Further, that Order directed Plaintiff to provide a date within 30 days of the date of the Order on which Defendant may inspect Plaintiff's allegedly damaged personal property which is at the center of this controversy.

Instead of compliance with this Court's November 23, 2009 Order, Plaintiff filed an application for an Order to Show Cause, dated December 14, 2009, why the deposition and inspection should not be stayed.  In support of the application for an Order to Show Cause, Plaintiff submitted a certification asserting that she was not competent to testify as a consequence of pain medication and antibiotics Plaintiff was taking as a result of an infected root canal.  Further, pursuant to that certification, Plaintiff submitted a "request that the Court reconsider its Order as it relates to the inspection because State Farm has waived the inspection on two occasions." The Court denied this application without prejudice.

In a December 30, 2009 letter from this Court, Plaintiff was informed that if a medical condition prevented Plaintiff from complying with a discovery Order of this Court, Plaintiff was required to submit a medical certification from Plaintiff's doctor.  That correspondence also reiterated that Plaintiff was prohibited from attempting to engage in ex parte communication with the Court.[8]

On January 11, 2010,[9] Plaintiff moved to reconsider this Court's November 23, 2009 Order as it relates to inspection, reasserting that Defendant waived inspection, and requested that the Court reschedule Plaintiff's deposition. Pursuant to the certification submitted in support of that motion, Plaintiff disclosed to the Honorable Dennis M. Cavanaugh, U.S.D.J. previously unrevealed information that "[i]n November 2008, after I fell behind for months in my monthly payments to the

---

[8]

On numerous occasions Plaintiff has attempted to engage in ex parte communication with this Court and has been rebuffed.  In the course of this misconduct, Plaintiff has represented that Plaintiff was in the process of retaining counsel and was explicitly told that if represented by counsel, Plaintiff's counsel is required to communicate with the Court on behalf of Plaintiff.

[9]

Plaintiff's moving papers are dated January 7, 2010, however, the filing entry on the docket is dated January 11, 2010.

storage facility because I could not afford to pay the monthly fees of $344.00 any longer, I had to discard the contaminated property, keep only the property that was not contaminated by the mold, and move my possessions into a smaller storage facility that had a lower monthly rental fee of $150.00."

   B.   Collateral Issues with Plaintiff's Former Counsel

   As of August 21, 2008, Evan L. Goldman, Esq., retained as counsel for Plaintiff in the Winter of 2008, submitted a letter to the Court indicating an intention to file a motion to withdraw as counsel as a consequence of misrepresentations made by Plaintiff.  In support of the motion to withdraw, Mr. Goldman submitted to the Court that Plaintiff failed to reveal, at the time of retention, the fact that Plaintiff had initiated suit against various New Jersey State Court Judges.  In a November 10, 2008 proceeding before the presiding Magistrate Judge in this matter, Mr. Goldman represented that Plaintiff "had not indicated to me at that time that perhaps the primary reason why she did not want to file suit against Lefrak in Jersey City was the fact that she had filed a previous lawsuit, I believe in federal court against the judiciary in Hudson County claiming that they were somehow connected or were not going to give her a fair shot in Jersey City.  I did not know at that time." November 10, 2008  Transcript, pg. 5, lines 12-18.  On October 15, 2008, this Court scheduled oral argument concerning Mr. Goldman's motion to withdraw.  Plaintiff failed to appear. Oral argument was rescheduled.  On November 10, 2008, by Order of this Court, Mr. Goldman was permitted to withdraw from representing Plaintiff further.

   On February 9, 2009, Plaintiff wrote to Mr. Goldman, requesting the client file in Plaintiff's case and indicating that Mr. Goldman had failed to forward the client file.  In response, Mr. Goldman indicated that he thought he had forwarded the file to Plaintiff, but would double check.  On

February 12, 2009, Plaintiff again emailed Mr. Goldman, reiterating the absence of the entire client file. In a December 7, 2009 letter to David Edelberg, Esq. of Nowell Amoroso Klein Bierman, PC,[10] Mr. Goldman represented that "[t]ogether with the previous documents forwarded to her, [Plaintiff] should now have her entire file and all of the correspondence and emails." In response, on December 18, 2009, Plaintiff wrote Mr. Goldman asserting that the file was incomplete. In a letter to Plaintiff dated December 23, 2009, Mr. Goldman reaffirmed that the entire file had been forwarded to Plaintiff.

As a result of correspondence from Plaintiff, on December 30, 2009, this Court directed Plaintiff's former attorney to turn over Plaintiff's client file, including any client papers and property, and upon completion, Mr. Goldman was directed to submit a certification to this Court. This was done even though Mr. Goldman represented to the Court that he had previously supplied Plaintiff with her entire file. On January 4, 2010, in accordance with this Court's letter, Mr. Goldman submitted a certification to this Court that the entire file possessed by Mr. Goldman had been transferred to Plaintiff. Pursuant to the January 4, 2010 certification, Mr. Goldman represented that he thought he had previously forwarded the entire file to Plaintiff prior to November 2009. However, upon notice by Plaintiff that he had apparently failed to do so, Mr. Goldman's January 4, 2010 certification represented that he simply Bates stamped and forwarded a copy of the file in accordance with the December 30, 2009 letter of this Court. Further, Mr. Goldman represented to the Court that Plaintiff also had been invited to review the file in his possession. In a letter dated January 8, 2010, Plaintiff submitted to this Court again that the entire file had not been transferred

---

[10]

Although it appears Mr. Edelberg was operating on Plaintiff's behalf, it is unclear to the Court in exactly what capacity given that Mr. Edelberg never entered an appearance on record before this Court.

to Plaintiff.  In a February 3, 2010 letter from the Magistrate Judge presiding over this matter, Plaintiff was informed that Mr. Goldman submitted a certification in accordance with the request of this Court, therefore, the Court would take no further action on the issue.

In spite of the letter from the presiding Magistrate Judge, on March 8, 2010, Plaintiff filed a formal motion requesting that the Court grant Plaintiff relief by issuing an Order requiring Mr. Goldman to turn over the entire client file and imposing sanctions against Mr. Goldman.  On March 11, 2010, this Court denied Plaintiff's motion on the grounds that the issue had previously been litigated before this Court and that Mr. Goldman had submitted a certification that client file had been transferred in accordance with the direction of this Court.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 37 vests a district court with inherent authority to impose sanctions where a party fails to make disclosures or cooperate in discovery.  Fed. R. Civ. P. 37.  "[A] district court's broad discretion to impose discovery sanctions pursuant to Rule 37(b) is limited by two standards[.]"  Harris v. City of Philadelphia, 47 F.3d 1311, 1330 (3d Cir. 1995).  "First, any sanction must be 'just'; second, the [s]anction must be *specifically related* to the particular 'claim' which was at issue in the order to provide discovery."  Id. (citing Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee, 456 U.S. 694, 707 (1982)).

Pursuant to Federal Rule of Civil Procedure 41, "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits." Fed. R. Civ. P. 41.  "[D]ismissals

14

under Rule 41(b) are 'only appropriate in limited circumstances . . .', Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002), because they are 'drastic' and 'extreme measures' that should only be reserved for cases where there has been 'flagrant bad faith' on the part of the plaintiffs." Mincy v. Klem, No. 07-2689, 2008 U.S. App. 25543, at *4-5 (3d Cir. Dec. 16, 2008) (citing Poulis, 747 F.2d at 867-68).

**III.   DISCUSSION**

Defendant now moves for dismissal of Plaintiff's Complaint "as a sanction for her willful disregard of the Court's November 23, 2009 Order and for her spoliation of evidence."

A.      Spoliation

Defendant asserts that without prior notice to Defendant, Plaintiff discarded the allegedly damaged personal property.  Accordingly, Defendants contend that the spoliation of crucial evidence requires dismissal of the Amended Complaint given that Plaintiff will be unable to establish a prima facie case, and further, dismissal is warranted as a consequence of the substantial prejudice seriously compromising Defendant's ability to present a viable defense in response to Plaintiff's contamination claim.  Moreover, Defendants contend that a lesser sanction will not suffice, asserting that even if the "Court were inclined to impose a lesser sanction such as preclusion of evidence, plaintiff's complaint would be subject to dismissal on the merits because, without the property, it is impossible for plaintiff to prove any of it was contaminated with mold."

In response, Plaintiff asserts that the spoliation resulted as a consequence of Defendant's actions, therefore, any prospective sanctions should be imposed against Defendant rather than Plaintiff.  Further, Plaintiff argues that Defendant was previously afforded an opportunity to inspect the allegedly damaged property as well as Plaintiff's residence, therefore, Defendant is not unduly

15

prejudiced.  To the extent that a sanction is imposed, Plaintiff contends that Defendant's previous inspection of Plaintiff's apartment indicates that a sanction other than dismissal would be sufficient to overcome any prejudice alleged by Defendant.

In Schmid v. Milwaukee, 13 F.3d 76 (3d Cir. 1994), the Third Circuit Court of Appeals recognizes that "there is some authority suggesting that spoliation of evidence, and the sanctions that such spoliation may give rise to, are matters appropriately governed by state law." See City of Erie v. Guaranty Nat'l Ins. Co., 109 F.3d 156, 158 n.1 (3d Cir. 1997) (acknowledging state law claim for spoliation of evidence); Miglicio v. HCM Claim Management Corp., 288 N.J. Super. 331 (Law Div. 1995) (recognizing spoliation of evidence claim as a tort). "On the other hand, there is also authority suggesting that the possible preclusion of evidence in cases such as this is governed by federal law as part of the inherent power of a district court to sanction parties." Schmid, 13 F.3d at 76 (citing Chambers v. NASCO, Inc., 501 U.S. 32 (1991))(recognizing the inherent power of the district court to sanction parties in appropriate cases); Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263, 267 (8th Cir. 1993) (recognizing the inherent power of a district court to sanction parties for destruction of evidence by, *inter alia*, excluding testimony); Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp., 982 F.2d 363, 368 (9th Cir. 1992) (same)). Similar to the foregoing case, "[t]he parties [here] have referred us to no case law, however, suggesting that the applicable federal and state law are materially different." Id.  Indeed, the parties' respective submissions rely on both federal and state law.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably for[e]seeable litigation." MOSAID Techs., Inc. v. Samsung Elecs. Co., 348 F. Supp. 2d 332, 335 (D.N.J. 2004); Aetna Life and Cas. Co.

16

v. Imet Mason Contractors, 309 N.J. Super. 358, 365 (App. Div. 1998) (citing Hirsch v. General

Motors Corp., 266 N.J. Super. 222, 234 (Law Div. 1993)). "Evidence of spoliation may give rise to

sanctions." Id. A litigant "is under a duty to preserve what it knows, or reasonably should know,

will likely be requested in reasonably foreseeable litigation." MOSAID, 348 F. Supp. 2d at 336

(citing Scott, 196 F.R.D. at 249). "If the duty to preserve evidence 'has not been triggered at the time

the evidence was destroyed, then there can be no spoliation.'" Antoine v. KPMG Corp., No. 08-

6415, 2010 U.S. Dist. LEXIS 1907, at *29 (D.N.J. Jan. 6, 2010) (quoting Kounelis v. Sherrer, 529

F. Supp. 2d 503, 518 (D.N.J. 2008) (An independent duty to preserve relevant evidence arises when

the party in possession of the evidence knows that litigation by the party seeking the evidence is

pending or probable and the party in possession of the evidence can foresee the harm or prejudice

that would be caused to the party seeking the evidence if the evidence were to be discarded).

 "The existence of a duty to preserve evidence is a question of law to be determined by the

court." Kolanovic v. Pak Gida A/S (Turk.), 77 F. Supp. 2d 595, 602 (D.N.J. 1999) (citing Aetna Life

and Cas. Co. v. Imet Mason Contractors, 309 N.J. Super. at 365). "[A] duty to preserve evidence,

independent from a court order to preserve evidence, arises where there is: (1) pending or probable

litigation involving the defendants; (2) knowledge by the plaintiff of the existence or likelihood of

litigation; (3) foreseeability of harm to the defendants, or in other words, discarding the evidence

would be prejudicial to defendants; and (4) evidence relevant to the litigation." Aetna Life and Cas.

Co., 309 N.J. Super at 366. (citing Hirsch, 266 N.J. Super. at 250). "The scope of the duty to

preserve evidence is not boundless. A 'potential spoliator need do only what is reasonable under the

circumstances.'" Hirsch, 266 N.J. Super. at 251 (citing County of Solano v. Dancy, 215 Cal. App.

3d 1232 (1989), petition for review denied, No. S013565, 1990 Cal. LEXIS 488 (Sup. Ct. Cal. Feb.

1, 1990)).  In that case, the New Jersey Superior Court acknowledges that "[a litigant] may terminate his responsibility . . . or he may discontinue his performance and step out of the picture altogether, upon notice of his intention and disclosure of what remains undone, provided that it is reasonable to do so under the circumstances." <u>Id</u>.

"Potential sanctions for spoliation include: dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs." <u>MOSAID</u>, 348 F. Supp. at 335.  "This Court has the authority to impose spoliation sanctions pursuant to the Federal Rules of Civil Procedure and this Court's inherent authority." <u>Id</u>. (citing <u>Scott v. IBM Corp.</u>, 196 F.R.D. 233, 247-48 (D.N.J. 2000)).

"Sanctions are appropriate when there is evidence that a party's spoliation of evidence threatens the integrity of this Court." <u>Id</u>.  "Spoliation sanctions serve a remedial function by leveling the playing field or restoring the prejudiced party to the position it would have been in without spoliation." <u>Id</u>.  "They also serve a punitive function, by punishing the spoliator for its actions, and a deterrent function, by sending a clear message to other potential litigants that this type of behavior will not be tolerated and will be dealt with appropriately if need be." <u>Id</u>.

"Dismissal or suppression of evidence are the two most drastic sanctions because they strike at the core of the underlying lawsuit." <u>Id</u>. "As such, they should only be imposed in the most extraordinary of circumstances." <u>Id</u>. "Three key considerations that dictate whether such sanctions are warranted are: '(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.'" <u>Id</u>. (quoting <u>Schmid</u>, 13 F.3d at 79).

18

Similarly, pursuant to New Jersey State Law, "[d]efault or dismissal of an action, as a discovery sanction, requires findings (1) that the spoliator acted willfully or in bad faith, (2) that the victim was seriously prejudiced by the spoliator's actions, and (3) that the alternative sanctions would not adequately punish the spoliator and deter future discovery violations." Hirsch, 266 N.J. Super. at 260. Courts have attributed intent to a spoliator who has violated a court order or an agreement to preserve the evidence. Hirsch, 266 N.J Super at 241 (internal citations omitted). "In absence of such compelling circumstances, however, traditional tort principles suggest that courts should require [parties] seeking recovery for intentional spoliation of evidence to prove that the [other party] intended to produce the harm or knew with substantial certainty that the harm, interference with another's prospective civil suit, would follow." Id.

"A far lesser sanction is the spoliation inference." Id. "The spoliation inference is an adverse inference that permits a jury to infer that 'destroyed evidence might or would have been unfavorable to the position of the offending party.'" Id. at 336 (citing Scott, 196 F.R.D. at 248); Barbera v. Di Martino, 305 N.J. Super 617, 642 (App. Div. 1997), cert. denied, 153 N.J. 213 (1998). "This inference is predicated upon the common sense observation that when a party destroys evidence that is relevant to a claim or defense in a case, the party did so out of the well-founded fear that the contents would harm him." Id. (citing Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 334 (3d Cir. 1995)). "In order for the spoliation inference to apply, four essential factors must be satisfied. First, 'it is essential that the evidence in question be within the party's control.'" Id. (citing Brewer, 72 F.3d at 334 (internal citation omitted)). Second, "it must appear that there has been actual suppression or withholding of the evidence." Id. "Third, the evidence destroyed or withheld was relevant to claims or defenses." Id. (citing Scott, 96 F.R.D. at 248). "And fourth, it was

reasonably foreseeable that the evidence would later be discoverable." Id.

       1.     Degree of Fault of Party Who Altered or Destroyed the Evidence

Plaintiff argues that the duty to preserve evidence is not boundless, asserting that a "spoilator need do only what is reasonable under the circumstances." Hirsch, 266 N.J. Super. at 251.   By contrast, Defendant contends that in discarding the allegedly damaged personal property without adequate prior notice, Plaintiff destroyed evidence in bad faith.

The allegedly damaged personal property was exclusively within Plaintiff's possession and control.  As a condition of Plaintiff's insurance policies, Plaintiff was required to preserve the evidence for litigation and was subject to examination under oath.  Moreover, given that litigation was foreseeable and that the evidence destroyed was integral to the issues in this case, Plaintiff had an independent legal obligation to preserve the property.

Upon Plaintiff's initial threat to discard the property, Defendant requested notice and an opportunity to maintain and preserve the property in anticipation of litigation.  In response, Plaintiff secured the allegedly damaged property in a storage facility.  Indeed, Plaintiff notified Defendant that maintenance of the property was costly and offered for Defendant to pay the storage costs, but reserved the exclusive right to control and possess the property.  In response, Defendant requested an opportunity to inspect the property before Plaintiff discarded the items.  An inspection date appears to have been scheduled for December 3, 2007 and thereafter cancelled by Plaintiff. Subsequently, Defendant made numerous requests to conduct an inspection, including, but not limited to, letters dated December 18, 2007, January 18, 2008 and March 5, 2008.

On August 6, 2009, this Court issued an Order extending discovery until October 2, 2009. In an August 17, 2009 response, Plaintiff submitted to the Court that she would be unable to comply

with that Order in the absence of Plaintiff's client file that was purportedly in the possession of Plaintiff's former attorney. On September 18, 2009, Defendant wrote Plaintiff underscoring the fact that Plaintiff failed to respond to Defendant's numerous requests to conduct an inspection and deposition. In response, Plaintiff again attributes non-compliance to the non-possession of the client file from her former attorney Mr. Goldman.   During that time Plaintiff never disclosed the destruction of evidence.

On November 23, 2009, this Court directed Plaintiff to make herself available for deposition and directed Plaintiff to make the allegedly damaged personal property available for inspection within 30 days of the date of that Order.  In lieu of compliance, on December 14, 2009, Plaintiff filed an application for an Order to Show Cause why the deposition and inspection should not be stayed. Notably, this is a very unusual and inappropriate application since the Court already ruled and all discovery disputes should have been brought to the attention of the Magistrate Judge for a quick resolution.  In support of this application, Plaintiff filed a certification in which Plaintiff attributes non-compliance to a root canal issue and strategically omits the fact that Plaintiff had discarded the contents of the storage facility in 2008.  Only upon filing a motion to reconsider the Order denying Plaintiff's application does Plaintiff ultimately disclose that, in November 2008, Plaintiff destroyed the evidence at the heart of this case.

Plaintiff's argument that Defendant waived inspection is unavailing and indeed discounted by the many letters submitted by Defendant to Plaintiff in an attempt to schedule an inspection.  On the actual dates or allotted periods scheduled for inspection, Plaintiff offered excuses including retention of new counsel, an absence of the case file or periodontal issues.  Even if the Court were to accept Plaintiff's excuse for lack of full competency with respect to Plaintiff's Court ordered

deposition, such an excuse does not relieve Plaintiff of the obligation to submit to Defendant a date for inspection or, in the alternative, to disclose to this Court and Defendant the truth that Plaintiff had discarded the contents of the storage facility previously.    Plaintiff's excuse rings particularly hollow in light of the fact that, upon Order of this Court, Plaintiff not only failed to comply with the inspection as directed, but also filed an Order to Show Cause disguising the fact that the contents of the storage facility had previously been discarded.  Moreover, despite this Court's discovery Order compelling discovery to conclude as of October 2, 2009, rather than disclosing the fact that Plaintiff had previously discarded the contents of the storage facility in November 2008, Plaintiff represented to this Court that Plaintiff's non-compliance was attributable to the alleged absence of the client file. Plaintiff only disclosed the fact that she had discarded the evidence material to this suit in her motion to reconsider, dated January 7, 2010 and filed January 11, 2010. Indeed, the discarded items are integral to Plaintiff's claims.   There is no evidence that Plaintiff afforded Defendant any notice within a reasonable time of actually discarding the personal property at issue.   Plaintiff's former assertions that she would be forced to discard property amount to idol threats where Plaintiff thereafter recanted and represented that the property was in a storage facility.  At a minimum, Plaintiff had an obligation to notify Defendant within a reasonable time upon the actual disposal and destruction of the property.   Even if Plaintiff purports that the destruction of evidence was not willful, the failure to timely disclose this information to Defendant and the Court was indeed willful and unacceptable.  To the extent Plaintiff was unable to comply with this Court's November 23, 2009 Order as it pertains to inspection, Plaintiff was required to immediately disclose, rather than disguise, this information to the Court.  Instead, Plaintiff attempted to obfuscate the truth by filing an application for an Order to Show Cause.

Finally, the Court notes that, although Plaintiff elected to proceed pro se upon the discharge of her former counsel, Plaintiff is a practicing attorney in the State of New York and an experienced litigant. Accordingly, Plaintiff must have foreseen the consequence of spoliating evidence, in spite of the duty to preserve, and failing to make appropriate disclosures. Therefore, culpability rests solely with Plaintiff.

2.      Degree of Prejudice to Defendant

Plaintiff asserts that Defendant conducted an inspection of the damaged property through its own agent on one occasion and through independent hygienists consulted by State Farm on a separate occasion. Accordingly, Plaintiff asserts that Defendant has not been prejudiced by the loss of evidence. Plaintiff cites to an October 30, 2007 letter in which Defendant indicated, "In any event . . . it is our understanding from the consultants who inspected the apartment that her contents can be cleaned." Additionally, Plaintiff cites to a letter from State Farm to the Department of Banking Insurance in which Defendant indicated that the "inspection consisted of verifying the extent of visible damage to the insured location, the extent of water damage to the personal property being claimed and a review of the facts of the loss."

In response, Defendant argues that the inspections conducted by State Farm all arose prior to Plaintiff's September 29, 2007 letter in which Plaintiff claims that all of her personal possessions were contaminated by mold and invites Defendant to inspect the allegedly contaminated property. Defendant asserts that pursuant to the April 26, 2007 inspection evaluating the water damage to the residence, Defendant requested Plaintiff to identify any damaged property. At that time, Plaintiff only claimed water damage to the legs of her dining room table, not wholesale mold to her belongings. A subsequent inspection occurred on May 2, 2007 as a consequence of Plaintiff's claim

23

that the landlord failed to properly clean the water leak possibly requiring Plaintiff to live elsewhere until completion of a proper cleaning. With respect to that inspection, Defendant asserts that Plaintiff never claimed damage to the contents of her apartment other than the legs of the dining room table. Similarly, according to Defendant, at the July 3, 2007 inspection, Plaintiff never claimed any damage to the contents of her apartment.  In support of this position, Defendant cites to a letter dated October 30, 2007 in which Defendant wrote, "[t]o the extent there is any secondary mold contamination on her contents, it is our understanding from the consultants who inspected the apartment that her contents can be cleaned."  Defendant indicates that this letter was written at a time when State Farm was in the process of attempting to schedule an inspection in response to Plaintiff's claim that her possessions were contaminated with mold.

"Loss, alteration, or destruction of evidence can certainly constitute prejudice." Mullin v. Keller Ladder Co., No. 06-480, 2008 U.S. Dist. LEXIS 22308, at *19 (D.N.J. Mar. 19, 2008); see Mears v. Sandoz Pharmaceuticals, Inc., 300 N.J. Super. 622, 633 (App. Div. 1997).  Prejudice may be established by demonstrating that the destroyed material is directly relevant to the issues in the case.  Crowley v. Chait, No. 85-2441, 2004 U.S. Dist. LEXIS 27235, at *28 (D.N.J. Dec. 27, 2004).  "In attempting to frame sanctions for destruction of evidence, courts should focus on the extent to which the destruction has impaired the other party's ability to prove his case." Ins. Servs. Office v. Cosentini Assocs., LLC, No. 05-1927, 2008 U.S. Dist. LEXIS 58763, at *6 (D.N.J. July 25, 2008)(internal citation omitted).

Plaintiff's Amended Complaint is premised upon two insurances policies issued by Defendant, a Renter's Policy and a Personal Articles Policy.  In discarding the contents of the storage facility, Plaintiff knowingly and intentionally engaged in the destruction of evidence.  The destroyed

24

evidence is indispensable to Plaintiff's claims.  In fact, the contents in dispute are at the heart of this litigation.  Defendant's defense is premised upon the notion that the allegedly contaminated contents can be remedied with a cleaning. Plaintiff's destruction not only deprived Defendant of the opportunity to conduct an inspection of the individual contents allegedly contaminated with mold, but also has left Defendant without any alternative means of establishing a viable defense that the contents may be cleaned if need be.   As a consequence of Plaintiff's failure to adequately notify Defendant in a timely manner of the final decision to discard the contents of the storage facility, Defendant has been severely prejudiced.  To the extent Defendant had a viable defense, namely that the contents did not contain mold or could be cleaned, an opportunity to inspect the contents of the storage facility was necessary.  Plaintiff's conduct has irreparably prejudiced Defendant.

> 3.    Applicability of a Lesser Sanction

Plaintiff disclaims responsibility for the spoilation of evidence. Accordingly, Plaintiff asserts that no sanction should be imposed against Plaintiff in the instant matter.   Defendant asserts that even if an alternative sanction could suffice in the instant matter, dismissal of Plaintiff's Complaint is still required. Specifically, Defendant proposes that even if the Court were to impose a lesser sanction barring the introduction of evidence that Plaintiff's personal property was contaminated with mold, in the absence of the contents, the effect would be the same given that Plaintiff would be unable to  prevail on a claim for property damage.

"No charge to the jury about adverse inferences to be drawn from spoliated evidence could level the field or cure the problem." Manorcare Health Services, Inc. v. Osmose Wood Preserving, Inc., 336 N.J. Super. 218 (App. Div. 2001).  "Preclusion of evidence as a sanction for failure to provide notice or make required disclosures is available 'in the limited circumstances where a lesser

sanction is not sufficient to remedy the problem caused by an inexcusable delay in providing the required notice, thereby resulting in substantial prejudice to the non-disclosed party's ability to mount an adequate defense.'" Id. (citing Mitchell v. Procini, 331 N.J. Super. 445, 453-54 (App. Div. 2000)). Substantial prejudice in maintaining one's defense "implies the loss of witnesses, the loss of evidence, fading memories, and the like." Id. "[T]he exclusion of testimony by surprise witnesses is an appropriate sanction in cases where failure to provide notice prejudiced the non-delinquent party." Id. (citing Wymbs v. Twp. of Wayne, 163 N.J. 523, 545 (2000)(finding that exclusion of the proffered testimony was the only viable option, where "[t]he surprise to plaintiffs was real, the State's conduct was inexcusable, and the prejudice to plaintiffs irreparable")). The "exclusion of testimony and/or evidence is an appropriate sanction to alleviate the prejudice resulting from serious discovery violations." Id. (internal citations omitted).

A sanction other than dismissal would be insufficient to remedy the prejudice caused by Plaintiff's intentional destruction of evidence and failure to provide appropriate notice to Defendant. Even if the Court were merely to preclude the admission of evidence concerning the allegedly contaminated contents of the storage facility, despite Plaintiff's unpalatable behavior, Plaintiff's claims could not survive. Nonetheless, in light of the fact that Plaintiff knowingly discarded evidence, failed to notify Defendant and failed to disclose this destruction in a timely and appropriate manner to the Court while an outstanding discovery order compelled Plaintiff to submit the allegedly damaged personal property for inspection, the Court cannot permit Plaintiff's Complaints to proceed.

### B.      Discovery Order Violation

Rule 37(b)(2) of the Federal Rules of Civil Procedure authorizes a district court to dismiss an action should a party fail to obey an order to provide or permit discovery. Rule 41(b) permits a

Defendant to file a motion to dismiss where Plaintiff fails to prosecute, or comply with the rules or

comply with an order of the court. Fed. R. Civ. P. 41.  A court decision to "deprive a party of the

right to proceed with or defend against a claim" requires application of the Poulis factors.  Hoxworth

v. Blinder, Robinson & Co., 980 F.2d 912, 919 (3d Cir 1992).  In assessing the propriety of such an

action, a court is required to balance the following factors:

> (1) the extent of the *party's* personal *responsibility;* (2) the *prejudice* to the adversary
> caused by the failure to meet scheduling orders and respond to discovery; (3) a
> *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful*
> or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails
> an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or
> defense.

Azkour v. Aria, No. 08-3133, 2009 U.S. App. LEXIS 10887, at *4-5 (3d Cir. May 21, 2009)

(quoting Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 867 (3d Cir. 1984)); see Ware v.

Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir. 2003).  In general, each of the Poulis factors should

be considered in deciding whether to dismiss an action.  Jackson v. United States Bankr. Court, No.

09-3186, 2009 U.S. App. LEXIS 24097, at *8 (3d Cir. Oct. 30, 2009); see Ware, 322 F.3d at 221-22.

"However, we have also recognized that *Poulis* does not set forth a 'magic formula,' see Briscoe v.

Klaus, 538 F.3d 252, 263 (3d Cir. 2008), and that, under sufficiently extreme circumstances, it

becomes unnecessary to expressly consider the *Poulis* factors at all." Id.; see Spain v. Gallegos, 26

F.3d 439, 455 (3d Cir. 1994).  "Such circumstances arise in cases where a litigant wilfully refuses

to prosecute his case or effectively makes it impossible to proceed, leaving the District Court with

little recourse other than dismissal."  Id.; see Spain, 26 F.3d at 455.

    1.    Responsibility

Plaintiff disclaims responsibility for any discovery failures because Plaintiff alleges that

Defendant had the opportunity to inspect the property on three separate occasions.  Additionally, Plaintiff argues that Defendant waived proposed inspections.  Finally, Plaintiff contends that despite allegations to the contrary, Plaintiff afforded Defendant advanced notice of the disposal of the contents of the storage facility on two separate occasions. In response to Defendant's allegation that Plaintiff's purported medical excuse was incredulous given that Plaintiff had been proceeding otherwise before this Court and before the Third Circuit Court of Appeals in a separate matter, Plaintiff asserts that Plaintiff's support staff was conducting business on Plaintiff's behalf.

By contrast, Defendant asserts that Plaintiff's failure to submit to a deposition as ordered and to produce the contents of the storage facility for inspection is the result of Plaintiff's conduct alone. Further, Defendant asserts that the vague certification submitted by Plaintiff fails to "constitute sufficient evidence of a medical condition preventing plaintiff from allowing an inspection or providing a deposition by December 23, 2009." Moreover, Defendant cites to numerous examples[11] where Plaintiff, who is a practicing attorney in the State of New York, was proceeding in a *pro se* capacity by filing motions and applications.

"[I]n determining whether dismissal is appropriate, [a court] look[s] to whether the party bears personal responsibility for the action or inaction [leading] to the dismissal." Adams v. Trustees of the N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873 (3d Cir. 1994).  As previously discussed, Plaintiff is exclusively responsible for the destruction of evidence and failure to timely

---

[11]

Defendant's examples: (a) on December 10, 2009, she filed a Petition For Rehearing En Banc in the Third Circuit in her case against several state court judges, Capogrosso v. Supreme Court of New Jersey (Gottilla Cert. Ex. 18); (b) on December 14, 2009, she filed reply papers in support of a prior reconsideration motion (Id. Ex. 19); (c) on or after December 14, 2009, she filed an application for an Order to Show Cause to add State Farm's counsel as defendants (Id. Ex. 14); and (d) on or after December 14, 2009, she filed an application for an Order to Show Cause seeking relief from the Court's November 23, 2009 Order (Id. Ex. 13).

disclose that fact to the Court as well as Defendant.  Further, the certification submitted in support of Plaintiff's motion for reconsideration of this Court's denial of Plaintiff's application for an Order to Show Cause and in support of the contention that Plaintiff was incapacitated for purposes of submitting herself to a deposition is ambiguous and consequently, unavailing.  The certification indicates that Plaintiff had root canal surgery shortly after Thanksgiving.  It is unclear why the exact date of surgery is neither submitted nor recorded. Even assuming Plaintiff had been incapacitated as a consequence of medication after root canal surgery, there is no reason Plaintiff could not have arranged to accommodate this Court's November 23, 2009 Order within the allotted time frame. Plaintiff submitted to the Court a copy of a prescription for Vicodin, dated November 30, 2009, containing twenty pills and prescribing a dosage of no more than four pills per day every six hours. The prescription says "No refills." Therefore, Plaintiff is entirely responsible for failing to appear for a deposition in accordance with this Court's Order, permitting Plaintiff to comply as late as December 23, 2009.  This factor favors dismissal.

 2. Prejudice

"Under the second Poulis factor, the Court examines the prejudice to other parties caused by the delay, including considering whether the party's conduct has resulted in 'extra costs, repeated delays, and the need to file additional motions in response to the abusive behavior of the responsible party.'" Chiarulli v. Taylor, No. 08-4400, 2010 U.S. Dist. LEXIS 32618, at *8 (D.N.J. Mar. 31, 2010) (quoting Huertas v. City of Philadelphia, No. 02-7955, 2005 U.S. Dist. LEXIS 1282 (E.D. Pa. Jan. 26, 2005), aff'd, 139 Fed. Appx.444 (3d Cir. July 14, 2005), cert. denied, 546 U.S. 1076 (2005). "A party may also be prejudiced if its 'ability to prepare effectively a full and complete trial strategy' is impeded." Id. (quoting Ware, 322 F.3d at 222).  "A finding of prejudice to the opposing party

under Poulis 'weighs heavily in favor of dismissal.'" Id. (quoting Huertas, 2005 U.S. Dist. LEXIS 1282 at *3).

Defendant has incurred prejudice not only as a consequence of Plaintiff's failure to comply with this Court's Order as it relates to inspection, but also as a consequence of Plaintiff's failure to comply with a Court ordered deposition.  Notably, Defendant previously requested to conduct Plaintiff's inspection, but Plaintiff represented that Plaintiff would absent from the country on the allotted date. Moreover, Plaintiff repeatedly delayed progress in this matter in refusing to comply with Court Orders and defense requests as a consequence of the alleged absence of the client file from Plaintiff's former counsel.  Although the prejudice arising from non-compliance with a Court ordered deposition alone may have been subject to mitigation, the prejudice arising from Plaintiff's overall has escalated to the point that such misconduct can no longer be rectified.  This factor favors dismissal.

### 3. Dilatoriness

Plaintiff asserts that the Poulis test requires a pattern of dilatoriness and that Plaintiff's requests for extensions upon good cause do not rise to that level.  Defendants, by contrast, acutely observe that not only has Plaintiff disregarded Court orders and time limitations in the present matter, but also Plaintiff has exhibited dilatory behavior before other courts as well, including the New York Appellate Division, see Capogrosso v. Kansas, 60 A.D. 3d 522, 874 N.Y.S.2d 376 (N.Y. App. Div. 2009) and the New Jersey State Court Capogrosso v. 30 River Court, No. A-5356-06T3, 2009 N.J. Super. Unpub. LEXIS 185 (App. Div. Feb. 4, 2009), cert. denied, 200 N.J. 370 (2009) ("deliberate and contumacious disregard of the court's authority.").

"Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." Chiarulli, 2010 U.S. Dist. LEXIS 32618, at *9 (quoting Adams, 29 F.3d at 874). This Court has been more than lenient concerning Plaintiff's failure to comply with Court orders and time restrictions. This Court has granted Plaintiff multiple time extensions, accepted submissions by Plaintiff that failed to comply with the directions of this court and even considered submissions that were not in conformance with local rules, by page limit or otherwise. Although instructive, the following list of examples concerning Plaintiff's dilatory behavior is not exhaustive.

On January 5, 2009, this Court granted Plaintiff an extension for filing an opposition to a motion to dismiss submitted on November 26, 2008 in Civil Action 07-5324 despite the fact that, at the time of Plaintiff's request, the filing deadline had already expired. See Dkt. Text Order dated January 5, 2008. Further, despite the Court's courtesy in granting Plaintiff a one month extension, Plaintiff failed to submit papers in accordance with the extended deadline, January 2. 2009. Nonetheless, the Court considered Plaintiff's submission filed two days later on January 4, 2009. See Dkt. #37, 07-cv-5324. In an Order dated February 26, 2009, this Court granted Plaintiff leave to file a motion to amend the Complaint in Civil Action 08-2229 no later than March 16, 2009. See Dkt. #33, 08-cv-2229. Failing to comply with that Order, Plaintiff filed a motion to amend the Complaint on March 19, 2009. See Dkt. #34, 08-cv-2229. Again, this Court exercised leniency in both considering and granting Plaintiff's motion to amend, despite Plaintiff's non-compliance. Upon representation by Plaintiff of an alleged inability to comply with this Court's Order directing the conclusion of discovery no later than October 2, 2009, this Court again exercised leniency extending the date for discovery. To reiterate, rather than complying with this Court's November 23, 2009 Order, Plaintiff

filed an ex parte application for an Order to Show Cause to stay the deposition and inspection under the guise that the contents of the storage facility still existed and that Plaintiff was merely prevented from complying with that discovery Order until Plaintiff was in a sound state of mind.  Again upon representation by Plaintiff of an alleged inability to meet a filing deadline, on December 2, 2009, this Court entered an Order granting Plaintiff leave to file a reply in a motion to reconsider and granting Plaintiff's request for an extension of time to file  reply papers.  See Dkt. #64, 08-cv-2229.  In accordance with a February 5, 2010 extension request submitted by Plaintiff, on February 16, 2010, this Court granted Plaintiff yet another extension, thirty days, to file opposition papers to Defendant State Farm's pending motion to dismiss filed on February 3, 2010.  See Dkt. #79, 08-cv-2229.

Further, Plaintiff's dilatory behavior is further evidenced by the ongoing controversy between Plaintiff and her former attorney.  Despite a September 15, 2008 Court Order directing the parties to appear for oral argument on October 15, 2008 concerning a motion to withdraw by Plaintiff's former counsel, Plaintiff failed to appear and the Court rescheduled the hearing on account of Plaintiff.  See Dkt. #18, 07-cv-5324.  Plaintiff used the alleged absence of the client file as an excuse for Plaintiff's failure to submit to Defendant's numerous requests to conduct an inspection and deposition.  Plaintiff further represented that she would not entertain Defendant's requests until the District Ethics Committee proceeding Plaintiff instituted on August 21, 2009 concluded.  As a consequence of Plaintiff's August 17, 2009 letter to the Court, asserting the alleged absence of the client file in this matter, despite a parallel proceeding initiated by Plaintiff before the District Ethics Committee on the exact same issue, on December 30, 2009, this Court  issued a letter directing Plaintiff's former counsel, Mr. Goldman, to turn over the entire client file to Plaintiff and submit a certification in support of that fact to this Court.  Within four days, Mr. Goldman complied with the

direction of this Court submitting a certification on January 4, 2010. In light of Plaintiff's continued attempts to relitigate the issue with Plaintiff's former counsel, the presiding Magistrate Judge in this matter issued a February 3, 2010 letter Order informing Plaintiff that no further action would be taken with respect to this issue. In response, Plaintiff filed a formal motion on March 8, 2010 seeking identical relief. On March 11, 2010, the Court again denied Plaintiff's motion on the grounds that the issue had already been litigated.

In summary, a June 30, 2008 car accident allegedly prevented Plaintiff from appearing at a Court Ordered conference in October of 2008 and continued to compromise Plaintiff's ability to proceed through December 2008 which served as the basis for Plaintiff's December 29, 2008 extension request, presented after the deadline for filing expired. Between September 2009 and March 2010, as a consequence of the alleged absence of the client file, Plaintiff has refused to comply with Defendant's inspection and deposition requests and allegedly was unable to comply with Court ordered discovery. Further, Plaintiff was unable to comply with deadlines between November 2009, around Thanksgiving, and January 2010 as a consequence of a 20-pill prescription for Vicodin issued on November 30, 2009 as a result of an infected root canal. Plaintiff has presented endless excuses, spanning years, inhibiting this litigation from moving forward.

Notably, although Plaintiff proceeds before this Court in a *pro se* capacity, Plaintiff is an attorney admitted to practice law in the State of New York. Accordingly, Plaintiff fully understands the consequences of dilatory conduct.[12]

Plaintiff has exhibited a pattern of severe dilatory behavior towards this Court. This factor

---

[12]

See Capogrosso v. Kansas, 60 A.D. 3d 522, 874 N.Y.S.2d 376 (N.Y. App. Div. 2009).

weighs in favor of dismissal.

        4.     Willful or Bad Faith

Plaintiff asserts that any perceived misconduct was neither willful nor in bad faith.  With respect to the deposition, Plaintiff asserts that she timely filed an application for an Order to Show Cause why the deposition should not be stayed.  Plaintiff asserts that, in response, the Court merely denied the application without prejudice indicating that the issue was more properly raised as a notice on motion. By contrast, Defendant asserts that root canal surgery fails to explain why Plaintiff was unable to comply with this Court's November 23, 2009 Order.  Moreover, Defendant contends that Plaintiff's conduct was indeed willful and in bad faith as evidenced by Plaintiff's August and September letters in which Plaintiff asserts every intention of compliance.

In the context of discovery sanctions, willfulness and bad faith "involve[ ] intentional or self-serving behavior." Chiarulli, 2010 U.S. Dist. 32618 at *10 (quoting Adams, 29 F.3d at 875).  In the context of the Poulis factors, "negligent behavior" or "failure to move with . . . dispatch" -- even if "inexcusable" -- will not suffice to establish willfulness or bad faith. Id. (citing Adams, 29 F.3d at 875-76).

Plaintiff misconstrues the basis for the denial of her application.  Although improperly raised as an application for an Order to Show Cause, Plaintiff's application was denied for lack of sufficient and appropriate support, namely an adequate medical certification.  While Plaintiff was not precluded from filing a motion, this Order was not an invitation for Plaintiff to refile the request as a motion. Nonetheless, as recited above, the medical certification submitted in support of Plaintiff's motion is ambiguous and consequently, unavailing.  Plaintiff's conduct amounts to a strategic measure to avoid this Court's November 23, 2009 Order and disguise the destruction evidence that

occurred in November 2008.  In fact, as represented by Plaintiff, this Court received a phone call on December 22, 2009 wherein Plaintiff represented to the Court that Plaintiff was suffering from an infection and was in the process of obtaining a CAT scan.  However, Plaintiff's subsequent motion to reconsider submission is neither temporally nor substantively reflective of these representations. Moreover, despite Plaintiff's representation of a support staff proceeding on Plaintiff's behalf, this alleged tooth infection, occurring shortly after Thanksgiving, precluded Plaintiff from complying with a Court Order compelling discovery within thirty days of the date of that Order, November 23, 2009, and as represented in a February 3, 2010 motion, precluded Plaintiff from filing a timely appeal (the general rule being thirty days) of a December 23, 2009 Opinion and Order of this Court. Accordingly, Plaintiff appears to represent that a tooth infection that Plaintiff was treated for shortly after Thanksgiving in 2009, precluded Plaintiff from proceeding for over two months.  The Court finds these representations willful, in bad faith and incredulous.  This factor favors dismissal.

     5.     Availability of Lesser Sanction

Plaintiff submits that a sanction other than dismissal will suffice, although Plaintiff declines to concede that any noncompliance has occurred warranting the imposition of sanctions.   Defendant asserts that a lesser sanction is insufficient to eliminate the prejudice incurred by Defendant as a consequence of Plaintiff's actions.   A lesser sanction will not suffice in light of Plaintiff's misconduct, including repeated disregard of court rules and orders.  This factor favors dismissal.

     6.     Meritoriousness of Claim

Plaintiff's Amended Complaint in Civil Action 08-2229 alleges that Defendant breached its insurance contracts by depriving Plaintiff of payment under the insurance policy, breached a covenant of good faith and fair dealing and acted in bad faith.  The remainder of Plaintiff's

Complaint in Civil Action 07-5324 appears to allege breach of contract and tort claims for failure to take remedial action with respect to the subject premises and damaged property.  Plaintiff's Complaint in that action also appears to concern an unlawful eviction claim arising from a State Court proceeding.  Plaintiff asserts that "a claim . . . will be meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff. . . " Poulis, 747 F.2d at 869-70 (internal citations omitted).   "[U]nder *Poulis,* a District Court assesses the merits of a claim under the same standard as a Rule 12(b)(6) motion to dismiss."  Jackson, No. 09-3186, 2009 U.S. App. LEXIS 24097 at *8 n.3; see Briscoe, 538 F.3d at 263.

With respect to the Amended Complaint in Civil Action 08-2229 and the breach of contract and tort claims asserted under the Complaint in Civil Action 07-5324, this factor weighs against dismissal.  However, pursuant to the Rooker-Feldman doctrine, it is not clear that Plaintiff's common law claim for reprisal eviction and retaliation is proper.

Nonetheless, a balancing of the Poulis factors requires dismissal of Plaintiff's Complaints. Accordingly, on this ground, Defendant's motion to dismiss is **granted.**

## IV.   CONCLUSION

For the foregoing reasons, in accordance with Fed. R. Civ. P. 37 and Fed. R. Civ. P. 41, the motion to dismiss Plaintiff's Amended Complaint in Civil Action 08-2229 and Complaint in Civil Action 07-5324 is **granted**.  An appropriate Order accompanies this Opinion.

        S/ Dennis M. Cavanaugh

Dated:     August   26 , 2010      Dennis M. Cavanaugh, U.S.D.J.

cc:       All Counsel of Record

       Hon. J. A. Dickson, U.S.M.J.

       File